Marvin, J.
The decision of this case depends upon the construction to be given to § 12 of the general railroad law, passed in 1850. (Chapter 140.) By that section it is provided, that “as often as any contractor for the construction of any part of a railroad, which is in progress of construction, shall be indebted to any laborer for thirty or any less number of days’ labor performed in constructing said road, such laborer may give notice of such indebtedness to said company in the manner herein provided; and said company shall thereupon become liable to pay such laborer the amount so due him for such labor; and an action may be maintained against said company therefor.” The notice must be in writing and state the amount and number of days’ labor, and the time when performed, and the name of the contractor from whom due. It must be signed by the laborer or his attorney, and must be served on an engineer, agent or superintendent employed by the company, having charge of the section of the road on which such labor was performed, personally or by leaving, &c. The action must be commenced in thirty days after service of the notice.
*631 Midler and Brintnall contracted with the railroad company to do the work in constructing the road, and they contracted with Bull to do a portion of this work, and the plaintiff labored for Bull; it is argued that Bull was not a “contractor” within the meaning of the statute; that Midler and Brintnall only were contractors. The primary meaning of the word contractor is one who contracts; one of the parties to a bargain; he who agrees to do anything for another is a contractor. One, who contracts with government to furnish provisions or supplies or to do work, is a contractor. It is clear from the statute that the term, as there used, does not include the railroad company, but some one who has contracted for the construction of some portion of the road.
The statute does not, however, in terms restrict the term contractor to one who makes the contract with the railroad company; nor is there in the context of the statute anything which thus limits the term. The language is: “Any contractor for the construction of any part of a railroad.” Is not any one, who enters into a contract to construct a portion of a railroad, a contractor for the construction of apart of the road? It certainly seems so to me. He may not have entered into a contract with the company. Still, if he has entered into such contract with any one he is a contractor. The statute does not use the term sub-contractor, which is sometimes used, though I do not find it in Webster’s dictionary. It has been said that those who contract with the immediate contractor of the company are sub-contractors. If it be conceded that this term, as used, would properly describe Bull, it will not follow that the language as used in the statute does not describe him properly. If the language of the statute, according to its ordinary meaning; embraces Bull, then, unless we find that the policy of the statute or something else indicates an intention on the part of the legislature to restrict the liability of railroad companies to pay for labor performed for their immediate contractors, the *632 plain language of the statute should have effect. We are to ascertain and declare the meaning of the statute. Its language, in my opinion, is sufficiently comprehensive to include the person who enters into a contract for the construction of a part of the road with one who has contracted with the company for the performance of the same work. I have not been able to perceive anything in the statute indicating a different intention in the legislature, or requiring a different construction. On the contrary, considering the whole section, and in view of the entire statute, it seems to me clear that the legislature intended to make provision for the payment of all laborers who should perform work in constructing the road for any contractor, whether such contractor entered into a contract immediately with the company or with one who had thus contracted with the company. The statute is remedial and was designed within certain, and I think safe limits, to enable the laborer, who had not been paid by his immediate employer, to resort to the railroad company whose road he was assisting to construct. It is well known that contractors sometimes become largely indebted to the laborers employed by them, and then abscond or fail to pay; and the design of the legislature was to furnish the laborer a new and additional remedy by enabling him to resort to the company. The legislature has been, however, careful not to carry this remedy to a dangerous extent. No laborer can recover for more than thirty days’ labor, and he must give the company notice and bring his action within thirty days after the notice. The railroad company can, by its contracts, protect itself. It can withhold payment to its contractors until all the laborers who have been employed in the construction of that part of the road have been paid, or it can provide by contract for withholding enough to pay them. Cases may undoubtedly occur where the company may be obliged to pay more than it has agreed to pay its contractors. Such cases, I apprehend, will be rare; and undoubtedly, in the *633 judgment of the legislature, it was better that the loss should fall upon the company than upon those who by their labor constructed the road.
It has been argued that this construction will lead to great inconvenience if extended to contracts made by contractors, as the company may have great difficulty in knowing who are contractors and who are laborers, and the state of the accounts between them. If the statute is plain, this argument will, of course, have no weight; but it has not seemed to me that, in practice, there can be any serious or embarrassing difficulty. The company always has agents, engineers or superintendents upon the road that is being constructed, and they will have a general knowledge of the condition and progress of the construction, and who are contractors and who are employed ; and it is upon one of these employees of the company that the notice must be served. The notice is to be in writing, and is to state the number of days labor, and when performed, and the amount due from the contractor, and the name of the contractor. It does not say the contractor of the company. These facts will enable the company to investigate the facts and to guard against surprise or frauds.
Some cases were cited upon the argument which it will be proper to notice. The present case was decided by the general term in the 7th district. The case contains no opinion of that court; but it is understood that it was decided upon the authority of Millered v. Lake Ontario, Auburn and New-York Railroad Company, decided in the same district, and reported in 9 How. Pr. R., 238. As already appears, I am not able to concur in the construction there given to the statute. Warner v. The Hudson River Railroad Company (5 How. Pr. R., 454,) is a special term decision, giving construction to a provision in the charter of that company (Laws of 1850, p. 14, § 5), similar to the provision in § 12 of the general railroad act. Justice Harris, in that case, came to the same conclusion to' which I have come in the *634 present case. It may be worthy of remark that the same legislature which enacted the general railroad law inserted at an earlier day in the session, the provision relating to the payment of laborers, in the act amending the act authorizing the construction of a railroad from New-York to Albany.
McClusky v. Cromwell (l Kern., 593,) was decided by this court in December, 1854. The case arose under the act to secure the payment of wages to laborers employed on the canals and other public works of this state. (Laws of 1850, p. 616.) By this statute it was made the duty of those letting contracts, to require and take a bond with sureties, conditioned that such contractor should pay in full, at least once in each month, “ all laborers employed by him on the work specified in such contract.” Any one for whose benefit the bond was taken, and to whom such contractor should be-indebted for labor, was authorized to bring suit upon the bond. The bond was given by Cromwell, who contracted with the canal commissioners, and his sureties. He sub-let a portion of the work to one Shippey, who employed laborers and neglected to pay them; and they brought the action upon the bond to recover of Cromwell. It was held by this court that Cromwell was not liable, and I certainly concur fully in the decision. The statute is very different from the one we are considering; it could not well have received any other construction. The condition of the bond was to pay “all laborers employed by him,” that is, by the contractor giving the bond; and the action could be brought by those to whom such contractor was indebted for labor. Justice Allen, in his opinion, refers with apparent approbation to Millered v. Lake Ontario, Auburn and New-York Railroad Company. But it does not appear that he carefully examined or considered the statute now under consideration, and marked the difference in the language of the two statutes. He had given an able exposition of the statute then under consideration, and it was not necessary that he should examine the statute we are considering.
*635 The cases arising under the lien laws of 1830 and 1832 are not applicable. The courts have given a construction to these statutes, and have held from the language contained in them, that the remedy was restricted to the creditors of the original contractor. (See the expositions of these statutes in Wood v. Donaldson, 17 W., 550, and S. C., in the court for the correction of errors, 22 id., 395.) This case is not controlled by any decision that has been made, and should be decided upon the statute of 1850. In my opinion the construction given to the statute by the supreme court was wrong, and the judgment should be reversed, and there should be judgment for the plaintiff, with leave to the defendant to withdraw the demurrer and answer upon payment of costs.
Gardiner, Ch. J., Denio, Johnson and Hand, Js., concurred in the foregoing opinion.
Crippen, J., delivered an opinion in favor of affirmance, and Dean, J., concurred with him. Ruggles, J., took no part in the decision.
Judgment reversed.